UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lincoln Benefit Life Company, a
Nebraska corporation

          Plaintiff,

v.

Brenda Kay Heitz, formerly known as
Brenda Kay Caswell, and Claudine Starkey,
as Administrator of the Estate of Dirk W.
Caswell,

          Defendants and Cross-Claimants.

Civil No. 06-366 (DWF/SRN)

**MEMORANDUM**
**OPINION AND ORDER**

_____

Robert J. Lange, Esq., Lange Law Office, counsel for Brenda Kay Heitz, formerly known as Brenda Kay Caswell.

Gary J. Haugen, Esq. and Nicole E. Narotzky, Esq., Maslon, Edelman, Borman & Brand, LLP, counsel for Claudine Starkey, as Administrator of the Estate of Dirk W. Caswell.

_____

**INTRODUCTION**

Lincoln Benefit Life Company ("Lincoln") initiated this interpleader action against Brenda Kay Heitz, formerly known as Brenda Kay Caswell, ("Heitz") and Claudine Starkey, as Administrator of the Estate of Dirk W. Caswell, (the "Estate") to resolve a dispute over who is the rightful beneficiary to proceeds from a life insurance policy. This matter came before the Court, pursuant to Heitz's and the Estate's Motions for Summary Judgment. For the reasons set forth below, the Court denies Heitz's motion and grants the Estate's motion.

**BACKGROUND**

For the purposes of these motions, the parties agree on the following facts.[1] Dirk W. Caswell ("Caswell") and Heitz, who had been friends for many years, were married on December 31, 1992. It was Caswell's first marriage and Heitz's third marriage. Caswell and Heitz had no children together.

On June 19, 1997, Caswell purchased a $150,000 flexible premium variable life insurance policy (the "Policy") from Lincoln. The Policy lists Caswell as its owner and its insured, and its rider lists Heitz as an additional insured. Under the Policy, Caswell had the right to designate his beneficiary. (Affidavit of Robert Lange ("Lange Aff."), Ex. 19 at 8.) When he bought the Policy, he designated Heitz, who was his wife at the time, as his beneficiary. The Policy allowed Caswell to unilaterally change his beneficiary designation at any time. Specifically, it explains that Caswell controls the Policy during his lifetime and that "[u]nless you provide otherwise, as owner, you may exercise all rights granted by the [Policy] without the consent of anyone else." (*Id.*, Ex. 19 at 9.) With respect to beneficiary changes, the Policy provides the following: "You may name new beneficiaries. We will provide a form to be signed. You must file it with us. Upon receipt, it is effective as of the date you signed the form, subject to any action we have taken before we received it." (*Id.*, Ex. 19 at 8-9.) Finally, the Policy

---

1   Not surprisingly, the parties do not agree on many factual issues, including why Heitz and Caswell divorced, Caswell and Heitz's relationship after the divorce, Caswell's relationship with his family, and whether Caswell intended Heitz to receive his life
(Footnote Continued on Next Page)

states that "[n]o beneficiary has any rights in this policy until the insured dies." (*Id.*, Ex. 19 at 9.)

On August 2, 2000, Caswell and Heitz separated. When they eventually decided to divorce, they did not retain counsel for their divorce; instead, they used forms provided by Easy Divorce Services, which they filed with Hennepin County District Court. On March 26, 2002, a Hennepin County Judge entered a Findings of Fact, Conclusions of Law, Order for Judgment and Judgment and Decree (the "Decree"), which finalized Caswell and Heitz's divorce. Section XII of the Findings of Fact section of the Decree provides:

> The parties are the owners of the following life insurance policies:
> [Heitz's] policies: none
> [Caswell's] policies: $150,000. policy in his name (appx. cash value $3,800.)

(Lange Aff., Ex. 9.) In paragraph 14 of the Conclusions of Law section of the Decree, it states that Caswell and Heitz "are each awarded all right, title, interest and equity of the parties in the policies insuring his or her own life." (*Id.*)

After Caswell and Heitz's divorce was finalized, Caswell contacted Lincoln at least four times. In 2003, he first contacted Lincoln to change his billing cycle and later to change his address. Next, Caswell contacted Lincoln in August 2004 to remove Heitz as an additional insured from the Policy, after she had married Tony Heitz in February

---

(Footnote Continued From Previous Page)
insurance benefits. These factual issues are not dispositive of this case.

2004. Specifically, on one of Lincoln's change request forms, he checked a box indicating he wanted to remove Heitz as an additional insured and then noted at the bottom of the form "Please remove [Heitz] from my account." (Lange Aff., Ex. 16.) Finally, in the fall of 2005, shortly before his death, Caswell spoke with his Lincoln agent at a bar, but he did not mention wanting to remove Heitz as his beneficiary.

On November 12, 2005, Caswell died in a motorcycle accident at the age of 41. Prior to his death, he never formally removed Heitz as the beneficiary of the Policy. At the time of his death, the Policy had a face value of $6,270.69.

Shortly after Caswell's death, Heitz and the Estate filed formal claims with Lincoln for the Policy's proceeds. In January 2006, Lincoln initiated this Federal Rule of Civil Procedure 22 interpleader action based on the diversity of citizenship between Lincoln, a Nebraska corporation, and Heitz and the Estate, both Minnesota residents. Heitz and the Estate filed cross-claims against each other, separately asserting that each is entitled to the Policy's proceeds. On April 4, 2006, pursuant to the parties' stipulation, the Court dismissed Lincoln from this action after it deposited the disputed funds in the Court's trust account. Heitz and the Estate now both move for summary judgment.

## DISCUSSION

**I.     Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences, which may be reasonably drawn from the

evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). As the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Section 524.2-804

The Estate asserts that it is entitled to summary judgment because Caswell's designation of Heitz as his beneficiary was automatically revoked by Minn. Stat. § 524.2-804.[2] That statute is nearly identical to § 2-804 of the Uniform Probate Code ("UPC"). To date, there are no reported or unreported cases interpreting the current

---

2      Minnesota law governs the Policy because Caswell signed his application for the
                                                              (Footnote Continued on Next Page)

version of § 524.2-804. Section 524.2-804 provides, in relevant part:

> Subdivision 1. Revocation upon dissolution. Except as provided by the express terms of a governing instrument, other than a trust instrument under section 501B.90, executed prior to the dissolution or annulment of an individual's marriage, a court order, a *contract relating to the division of the marital property made between individuals* before or *after their marriage*, dissolution, or annulment, or a plan document governing a qualified or nonqualified retirement plan, the dissolution or annulment of a marriage revokes any revocable:
>
> (1) disposition, *beneficiary designation*, or appointment of property made by an individual to the individual's former spouse in a governing instrument.

Minn. Stat. § 524.2-804 (emphasis added). Under the statute, "provisions of a governing instrument are given effect as if the former spouse died immediately before the dissolution or annulment." *Id*. at subd. 2. Section 524.2-804 was modified in 2002 to apply to any beneficiary designations, including those in life insurance policies, and in 2004 to apply to decedents dying after July 31, 2002. Caswell died in 2005.

Heitz responds that § 524.2-804 is an unconstitutional impairment on contracts and therefore does not apply. Specifically, Heitz argues that application of § 524.2-804 would retroactively impair the obligations of Caswell's pre-existing contract obligation in violation of Article I, § 10 of the United States Constitution.[3] Assuming the statute is

---

(Footnote Continued From Previous Page)
Policy in Minnesota. (Lange Aff., Ex. 19 at 14.)

3   Heitz did not specifically raise the issue of whether § 524.2-804 violates the Minnesota Constitution. If she had, however, the Court would not need to address such a challenge separately because Minnesota constitutional impairment of contracts claims follow federal principles. *See, e.g., Christensen v. Minneapolis Mun. Employees Ret. Bd.,*
(Footnote Continued on Next Page)

constitutional, Heitz argues that an exception to the statute is applicable because she and Caswell entered into an oral contract about Caswell's beneficiary designation after their divorce.

### A.     Section 524.2-804 is Constitutional

"[T]he laws which subsist at the time and place of the making of a contract . . . enter into and form a part of it." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 188 (1992) (quotation marks and citations omitted). Because the current version of § 524.2-804 was enacted after Caswell purchased the Policy and after Caswell and Heitz's divorce, Heitz argues that retroactive application of the statute is unconstitutional.

The United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. Art. I, § 10, cl.1. As the Eighth Circuit has explained, "[r]ead literally, this constitutional prohibition bans any interference with contracts, but cases interpreting the clause clearly indicate that this prohibition 'is not an absolute one and is not to be read with literal exactness like a mathematical formula.'" *Honeywell, Inc. v. Minnesota Life and Health Ins. Guar. Ass'n*, 110 F.3d 547, 551 (8th Cir. 1997) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428, (1934)). When a party contends that a legislative amendment has impermissibly impaired contractual obligations, a court initially focuses on whether the

---

(Footnote Continued From Previous Page)
331 N.W.2d 740, 750-51 (Minn. 1983).

change in state law has operated as a substantial impairment of a contractual relationship. *Id.* Three basic components are essential to a court's inquiry: (1) does a contractual relationship exist; (2) does the change in the law impair that contractual relationship; and if so, (3) is the impairment substantial? *Id.* If a substantial impairment of a contractual relationship exists, the statute nonetheless survives a constitutional attack if the impairment is justified as reasonable and necessary to serve an important public purpose. *Koster v. City of Davenport, Iowa*, 183 F.3d 762, 766 (8th Cir. 1999).

### 1. Vested Contractual Right

To establish a contractual relationship subject to the Contract Clause, a party first must demonstrate that the contract gave her a vested interest, not merely an expectation interest. *See Dodge v. Bd. of Educ.*, 302 U.S. 74, 78-79 (1937). The Estate argues that Heitz cannot establish the existence of a contractual relationship because the designation of a beneficiary to a life insurance policy is a donative transaction. The Estate points out that the Policy allowed Caswell to change his designation at any time, which means that, at most, Heitz had an expectancy, not a vested, interest in the Policy. The Estate concedes that Caswell had a vested contractual right, but argues that Heitz does not have standing to raise a Contract Clause violation on behalf of Caswell. Heitz responds that Caswell's designation of Heitz as his beneficiary created a vested contractual obligation upon Lincoln to pay the proceeds of the Policy to Heitz.

The Court agrees with the Estate that Heitz has no vested contractual right. The Policy explicitly states that the beneficiary has no rights in the Policy until the insured

dies. Moreover, in the Policy itself and in the Decree, Caswell expressly reserved his right to change his beneficiary at any time, without Heitz's consent. Life insurance policies are unique contracts. If the mere act of naming a person a beneficiary conferred a vested right upon that person, no owner of a policy could ever change his or her designation without the consent of the beneficiary, and the courts would be inundated with cases alleging breach of contract. The law is clear that no vested rights are created by simply naming a beneficiary: Where the owner of a life insurance policy retains right to name new beneficiaries, a beneficiary retains only a contingent interest in the proceeds of a policy. *See Morgan v. Penn Mut. Life Ins. Co.*, 94 F.2d 129, 130 (8th Cir. 1938) (applying Missouri law); *see also Luxton v. State Farm Life Ins. Co.*, 2002 WL 254023 at * 6 (D. Minn. Jan. 15, 2002) (applying Minnesota law); *see also Statement of the Joint Editorial Board for Uniform Probate Code Regarding the Constitutionality of Changes in Default Rules as Applied to Pre-Existing Documents* (1991) (explaining that a life insurance contract is part third-party beneficiary contract and part donative transfer that confers no vested interest in the beneficiary).

Other courts analyzing statutes similar to § 524.2-804 have concluded that an ex-spouse's beneficiary designation prior to divorce does not create a vested contractual right in the ex-spouse sufficient to allege a Contract Clause challenge. *See, e.g., Stillman v. Teachers Ins. and Annuity Assn. Coll. Ret. Equities Fund*, 343 F.3d 1311, 1322 (10th Cir. 2003), *Allstate Life Ins. Co. v. Hanson*, 200 F. Supp. 2d 1012, 1019 (E.D. Wis. 2002); *Mearns v. Scharbach*, 12 P.3d 1048, 1056 (Wa. Ct. App. 2000). The Court finds

those cases persuasive.

Heitz's right to recover as Caswell's named beneficiary did not arise until he died in 2005, after § 524.2-804 was enacted. She had no vested interest before that time. The Contracts Clause addresses contracts, not donative transfers. Because § 524.2-804 does not impair any contractual relationship of Heitz, her constitutional challenge fails.

### 2. Substantial Impairment, If Any, Was Justified

The parties agree that Caswell had a vested contractual interest in the Policy. Assuming, without deciding, that Heitz can raise a constitutional challenge on behalf of Caswell, the issue, then, is whether § 524.2-804 impaired Caswell's vested right, if that impairment was substantial, and if so, whether it was justified.

Relying on *Whirlpool v. Ritter*, 929 F.2d 1318 (8th Cir. 1991), Heitz argues that the Court must find that § 524.2-804 unjustifiably substantially impaired Caswell's rights. In that case, the Eighth Circuit Court of Appeals, analyzing the descendant's contractual rights, found an Oklahoma revocation-upon-divorce statute unconstitutional as applied to a beneficiary designation of a life insurance contract. *Whirlpool*, 929 F.2d at 1323. The court reasoned that the insured party "was entitled to expect that his wishes regarding the insurance proceeds, as ascertained pursuant to [the] then-existing law, would be effectuated" and that the Oklahoma statute substantially impaired the insured contract. *Id*. at 1322. *Whirlpool,* however, is distinguishable from the present case.

The statute involved in *Whirlpool* is not based on the 1990 version of the UPC, as is § 524.2-804, and the purposes behind the two statutes are different. Although not

binding, the Oklahoma Court of Appeals had previously declared, in an unpublished opinion, that the Oklahoma statute was unconstitutional.  In contrast, to the best of the Court's and the parties' knowledge, no Minnesota court has found § 524.2-804 to be unconstitutional.  Additionally, the decedent and his ex-wife in *Whirlpool* had four children together, but here, Caswell and Heitz had no children together.  Finally, no information is given about the policy involved in *Whirlpool*.  Here, the Policy clearly states that Caswell's beneficiary designation is revocable without Heitz's consent and that Heitz had no interest in the Policy until Caswell died.  Given these differences, Heitz's reliance on *Whirlpool* is misplaced.

In *Allstate Life Ins. Co. v. Hanson,* the court considered whether a Wisconsin statute similar to § 524.2-804 was unconstitutional.  *Hanson,* 200 F. Supp. 2d at 1013.  In that case, after Richard Hanson died, a dispute arose between his ex-wife and his mother over who was the rightful beneficiary to proceeds of a life insurance policy that Richard had purchased in 1989 when he was married to his ex-wife.  *Id*. at 1015.  Analyzing Richard's contractual rights, the court determined that the statute at issue did not substantially impair his contractual rights because the essential elements of the bargained-for exchange remained intact, the change in the law was foreseeable because Wisconsin heavily regulates the transfer of assets upon death, and the statute was merely a default rule which Richard could have avoided with an affirmative act.  *Id.* at 1020.

The Court finds *Hanson* persuasive.  Under the Policy, Lincoln had a contractual relationship with Caswell to pay proceeds to a beneficiary upon his death.

Section 524.2-804 did not alter that contractual relationship; the Policy remained in effect and enforceable. The only thing the statute did was to change the identity of Caswell's beneficiary. An automatic change in a contingent beneficiary designation—one that Caswell could have avoided by affirmatively naming Heitz as his beneficiary—does not, by itself, constitute substantial impairment.

If, however, § 524.2-804 somehow did substantially impair Caswell's contractual rights, such impairment would nonetheless survive a constitutional challenge because the impairment is justified and reasonable in that it serves important public purposes, including promoting uniformity among state law treatment of probate and non-probate transfers and implementing a rule of construction that reflects legislative judgment that ex-spouses often intend to change their beneficiaries. *See, e.g.,* Minn. Stat. § 524.1-102 (discussing probate code's underlying purposes and policies); *Stillman*, 343 F.3d at 1317 (explaining that revocation-upon-divorce statutes respond to the decline of formalism in favor of intent-serving policies). Therefore, even if Heitz could raise a constitutional challenge on Caswell's behalf, her claim would fail because the Court concludes that § 524.2-804 did not substantially impair Caswell's contractual rights and if substantial impairment was found, it would be justified.

      **B.**     **Caswell and Heitz Did Not Enter Into an Oral Contract**

There are four exceptions to automatic revocation under § 524.2-804: (1) by express terms of the governing instrument; (2) by a court order; (3) by a contract relating to the division of martial property made between individuals before or after their

marriage, dissolution, or annulment; and (4) by a plan document governing a qualified or nonqualified retirement plan. Minn. Stat. § 524.2-804. subd. 1.  Heitz asserts that she and Caswell entered into an oral contract after their marriage to ensure that they would remain each other's beneficiaries.  She therefore contends that § 524.2-804, if constitutional, did not automatically revoke Caswell's designation because an exception to the statute applies.

Under Minnesota law, a person can bind himself, in certain circumstances, to an oral contract.  *McCarty v. Nelson*, 47 N.W.2d 595, 598 (Minn. 1951).  The terms of the contract, however, must be so definite and certain as to leave no doubt as to the terms of the contract, and the person seeking to enforce the contract must prove the contract by clear and convincing evidence.  *See Carlson v. Carlson*, 300 N.W. 900, 902 (Minn. 1941).  Here, Heitz provides no specific details for this alleged agreement.  She admits that she gave no consideration, that the contract had no specific duration, and that she does not know when the contract was formed.  (Lange Aff., Ex. 2 at 68-69, 105-108.)  In essence, through this argument, Heitz seeks to modify the express terms of the Decree with an oral contract.  She has not produced clear and convincing evidence of the existence of an oral contract, and her attempts to do so violate the statute of frauds and/or the parole evidence rule.  *See, e.g., Semanko v. Minn. Mut. Life Ins. Co.*, 168 F. Supp. 2d 997, 1001-02 (D. Minn. 2000).

Viewing the evidence in the light most favorable to Heitz, without more, a reasonable fact-finder could not find that Caswell and Heitz reached an oral agreement

about Caswell keeping Heitz as his beneficiary.  Therefore, the Court concludes that the oral contract exception to § 524.2-804 is not applicable in this case.  Having concluded that § 524.2-804 is constitutional and that there was no oral contract between Caswell and Heitz, the Court finds that § 524.2-804 automatically revoked Caswell's designation of Heitz as his beneficiary.  Therefore, the Court grants the Estate's summary judgment motion.

### III.   Divorce Decree

Based on the Decree and the circumstances surrounding Caswell and Heitz's relationship after their divorce, both the Estate and Heitz contend that they are entitled to summary judgment.  Specifically, the Estate contends that it is entitled to summary judgment because, under Minnesota law, the Decree effectively revoked Caswell's beneficiary designation, especially in light of unambiguous language of the Decree and the facts surrounding Caswell and Heitz's marriage and divorce.  Conversely, Heitz essentially urges the Court to ignore the Decree because Easy Divorce Services prepared the form that Caswell and Heitz submitted to the Hennepin County District Court.  Heitz argues that Minnesota law requires the Court to consider Caswell and Heitz's relationship after the divorce because the Decree is ambiguous, and it contends that the facts indisputably establish that Caswell wanted Heitz to remain the beneficiary of his life insurance policy after their divorce.

Given the application of § 524.2-804, the Court need not reach the issue of how Caswell's designation was impacted by the Decree or Caswell and Heitz's relationship

after the divorce. The Court notes, however, that the language in the Decree is consistent with the result reached today under § 524.2-804.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Brenda Kay Heitz's Motion for Summary Judgment (Doc. No. 21) is **DENIED.**

2.  Claudine Starkey's Motion for Summary Judgment (Doc. No. 24) is **GRANTED.**

3.  The Estate of Dirk W. Caswell is entitled to the proceeds of Dirk W. Caswell's $150,000 life insurance policy, plus interest, and the Policy's value as of the date of Caswell's death in the amount of $6,270.69, which Lincoln Benefit Life Company deposited with the Clerk of Court pursuant to the Court's April 4, 2006 Order. The Clerk of Court is directed to release the said funds to Claudine Starkey, as Administrator of the Estate of Dirk W. Caswell.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 4, 2007         s/Donovan W. Frank
                               DONOVAN W. FRANK
                               Judge of United States District Court